Joshua D. Bendor, 031908
OSBORN MALEDON, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2793
(602) 640-9000
jbendor@omlaw.com

KEKER, VAN NEST & PETERS LLP
Paven Malhotra (*pro hac vice to be filed*)
pmalhotra@keker.com
Deeva Shah (*pro hac vice to be filed*)
dshah@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:   415 391 5400
Facsimile:   415 397 7188

Attorneys for Defendant Facebook, Inc..

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Leland Damner, an individual,<br><br>       Plaintiff,<br><br>    v.<br><br>Facebook, Inc., a Delaware corporation,<br><br>       Defendant. | No. CV-20-00911-PHX-CDB<br><br>**DEFENDANT FACEBOOK, INC.'S MOTION TO DISMISS AND, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE**<br><br>(Telephonic Oral Argument Requested) |

# TABLE OF CONTENTS

**Page(s)**

I.     INTRODUCTION ..................................................................................................1

II.    BACKGROUND .................................................................................................2

       A.     Plaintiff's Allegations ...............................................................................2

       B.     Facebook's Statement of Rights and Responsibilities and the Forum
              Selection Clause.........................................................................................3

III.   ARGUMENT .......................................................................................................4

       A.     The Court should dismiss the Complaint for lack of personal jurisdiction. ...........4

              1.     Rule 12(b)(2) Standard ...................................................................4

              2.     Plaintiff has failed to establish that this Court has personal
                     jurisdiction over Facebook...........................................................4

       B.     The Court should dismiss the Complaint with prejudice for failure to state a
              claim...........................................................................................................7

              1.     Standard ........................................................................................7

              2.     Plaintiff has no cause of action against Facebook under the Stored
                     Communications Act. ....................................................................8

              3.     The Complaint fails to state a claim for breach of contract. ....................11

              4.     The Complaint fails to state a claim for intrusion of seclusion. ...............13

              5.     The Complaint fails to state a claim for negligence. ................................13

IV.    ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS CASE TO THE
       NORTHERN DISTRICT OF CALIFORNIA. ....................................................14

       A.     The parties agreed to litigate in the Northern District of California.....................14

       B.     Plaintiff cannot rebut the presumption that this Court should enforce the
              forum-selection clause. ............................................................................15

              1.     Plaintiff cannot establish that the forum-selection clause is invalid..........15

              2.     Plaintiff cannot show any extraordinary circumstances requiring
                     deviation from the forum-selection clause.................................................16

V.     CONCLUSION...................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Amba Marketing Sys., Inc. v. Jobar Int'l, Inc.*,
 551 F.2d 784 (9th Cir. 1977) ........................................................................................4

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .....................................................................................................7

*AT&T v. Compagnie Bruxelles Lambert*,
 94 F.3d 586 (9th Cir. 1996) ........................................................................................4

*Atlantic Marine Construction Company v. U.S. District Court for the Western
 District of Texas*,
 571 U.S. 49 (2013) ................................................................................................15, 16

*Beecher v. Google N. Am. Inc.*,
 No. 18-CV-00753-BLF, 2018 WL 4904914 (N.D. Cal. Oct. 9, 2018) .....................12

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ..................................................................................................7, 8

*BNSF Ry. Co. v. Tyrrell*,
 137 S. Ct. 1549 (2017) .................................................................................................5

*Boschetto v. Hansing*,
 539 F.3d 1011 (9th Cir. 2008) .....................................................................................5

*Bristol-Myers Squibb Co. v. Superior Court*,
 137 S. Ct. 1773 (2017) .................................................................................................7

*Daimler AG v. Bauman*,
 571 U.S. 117 (2014) ..................................................................................................5, 6

*Doe 1 v. AOL LLC*,
 552 F.3d 1077 (9th Cir. 2009) ...................................................................................16

*Dolin v. Facebook, Inc.*,
 289 F. Supp. 3d 1153 (D. Haw. 2018) .......................................................................16

*Franklin v. Facebook Inc.*,
 No. 1:15–CV–00655-LMM, 2015 WL 7755670 (N.D. Ga. Nov. 24, 2015) .......16, 17

*Garback v. Lossing*,
 No. 09-cv-124067, 2010 WL 3733971 (E.D. Mich. Sept. 20, 2010) .......................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 564 U.S. 915 (2011) .....................................................................................................5

1385714

*In re Google, Inc. Privacy Policy Litig.*,
  No. C-12-01382-PSG, 2013 WL 6248499 (N.D. Cal. Dec. 3, 2013) ......................................9

*Int'l Shoe Co. v. Wash.*,
  326 U.S. 310 (1945) ................................................................................................................4

*In re iPhone Application Litig.*,
  844 F.Supp.2d 1040 (N.D. Cal. 2012) ...................................................................................9

*Kincaid v. Wells Fargo Bank, N.A.*,
  No. CV–10–579–PHX–DGC, 2010 WL 2899058 (D. Ariz. July 22, 2010) .........................12

*Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*,
  306 F.3d 806 (9th Cir. 2002) ................................................................................................13

*Miller v. Facebook, Inc.*,
  No. 1:09-CV-2810-RLV, 2010 WL 9525523 (N.D. Ga. Jan. 15, 2010) ..........................16, 17

*Morrill v. Scott Fin. Corp.*,
  873 F.3d 1136 (9th Cir. 2017) ................................................................................................4

*Muskovich v. Crowell*,
  No. CIV. 3-95-CV-20007, 1996 WL 707008 (S.D. Iowa Aug. 30, 1996) ......................10, 11

*Ralls v. Facebook*,
  221 F. Supp. 3d 1237 (W.D. Wash. 2016) .............................................................................5, 6

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ............................................................................................5, 6, 7

*Sher v. Johnson*,
  911 F.2d 1357 (9th Cir. 1990) ................................................................................................4

*Song fi, Inc. v. Google Inc.*,
  72 F.Supp.3d 53 (D.D.C. 2014) ...........................................................................................17

*Sun v. Advanced China Healthcare, Inc.*,
  901 F.3d 1081 (9th Cir. 2018) .........................................................................................15, 16

*Svenson v. Google Inc.*,
  65 F.Supp.3d 717 (N.D. Cal. 2014) .......................................................................................9

*Walden v. Fiore*,
  571 U.S. 277 (2014) ............................................................................................................6, 7

*We Are The People, Inc. v. Facebook, Inc.*,
  No. 19-cv-8871(JMF), 2020 WL 2908260 (S.D.N.Y. June 3, 2020) ....................................16

*Worix v. MedAssets, Inc.*,
  857 F. Supp. 2d 699 (N.D. Ill. 2012) ...............................................................................10, 11

iii

*World-Wide Volkswagen Corp. v. Woodson*,
    444 U.S. 286 (1980) .......................................................................................................5

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*,
    135 F.3d 658 (9th Cir. 1998) ........................................................................................3

*Young v. Facebook, Inc.*,
    No. 5:10–cv–03579–JF/PVT, 2010 WL 4269304 (N.D. Cal. Oct. 25, 2010) ..................12, 14

*Yount v. Acuff Rose–Opryland*,
    103 F.3d 830 (9th Cir. 1996) ......................................................................................11

**State Cases**

*Amfac Distrib. Corp. v. J.B. Contractors, Inc.*,
    146 Ariz. 19 (App. 1985) ............................................................................................11

*Ladd v. Cty. of San Mateo*,
    12 Cal. 4th 913 (1996) ................................................................................................13

*Shulman v. Group W Prods., Inc.*,
    18 Cal. 4th 200 (1998) ................................................................................................13

*Wertheim v. Pima Cty.*,
    211 Ariz. 422 (App. 2005) ..........................................................................................13

**Federal Statutes**

18 U.S.C. §§ 2701 et. seq. (Stored Communications Act) ................................................. *passim*

28 U.S.C. § 1404(a) ...............................................................................................2, 14, 15

**Rules**

Fed. R. Civ. P. 12(b)(2).....................................................................................................4

**Other Authorities**

H.R.Rep. No. 647, 99th Cong., 2nd Sess. (1986) ........................................................10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1385714

Case 3:20-cv-05177-JCS   Document 9   Filed 06/16/20   Page 6 of 23

## I.      INTRODUCTION

Plaintiff Leland Damner alleges that his "Facebook account was hacked by an unknown source" around April 20, 2020. *See, e.g.,* ECF No. 1 ("Compl.") ¶ 15. Nowhere does Plaintiff allege that Facebook caused this alleged hack; to the contrary, Plaintiff acknowledges the responsibility of an unknown third-party hacker. *Id.* Nevertheless, through this lawsuit, Plaintiff seeks to hold Facebook responsible for the alleged harm from this unknown hacker's conduct. Whatever the merits of any claims Plaintiff may have against this unknown hacker, he *cannot* hold Facebook liable for the activities of a third party on Facebook's platform.

Plaintiff cobbles together allegations to assert that Facebook divulged the content of Plaintiff's account to this hacker, thus violating two provisions of the Stored Communications Act ("SCA"). Compl. ¶¶ 20-27. Plaintiff then repackages those allegations as claims for breach of contract, negligence, and intrusion on seclusion. None of the five claims is viable.

*First*, Plaintiff has not alleged facts sufficient to establish this Court can exercise personal jurisdiction over Facebook.

*Second*, Plaintiff has not sufficiently pled any claim under the Stored Communications Act. Plaintiff's Section 2701(a) claim fails because (1) the SCA exempts Facebook from liability; (2) Facebook's conduct was authorized; and (3) the Complaint fails to allege facts demonstrating Facebook had the requisite intent. Plaintiff's Section 2702(a) claim fails because the Complaint lacks facts alleging that Facebook "knowingly divulge[d]" the contents of Plaintiff's account to a third party. 18 U.S.C. § 2702(a).

*Third*, Plaintiff does not state a claim for breach of contract. The contract at issue makes clear that Facebook is not liable for the actions of a third party.

*Fourth*, Plaintiff does not state a claim for the tort of intrusion upon seclusion, because the Complaint does not allege how Facebook—as opposed to an unknown hacker—violated Plaintiff's right to privacy. Facebook's user agreement also bars this claim.

1

*Fifth*, Plaintiff does not state a claim for negligence because the Complaint does not allege what specific duty Facebook owed to Plaintiff and how Facebook breached that duty. To the contrary, the applicable contract states Facebook is not liable for the actions of third parties on its platform.

Because these deficiencies cannot be cured by amendment, Facebook respectfully requests that the Court dismiss Plaintiff's Complaint with prejudice. If the Court does not dismiss the action, it should transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a) because Plaintiff has agreed to litigate any claims against Facebook in California.[1]

## II.    BACKGROUND

### A.    Plaintiff's Allegations

Facebook operates a social networking platform where users can create online profiles, post content, and interact with other users. Plaintiff alleges that on April 20, 2020, "Plaintiff's Facebook account was hacked by an unknown source." Compl. ¶ 15. Plaintiff alleges that someone, unknown to him still today, "has control over Plaintiff's Facebook account and is sending messages to other users demanding money." *Id.* at ¶ 18.[2] According to the Complaint, this unknown hacker has "changed Plaintiff's password and other credentials, so Plaintiff is effectively locked out of his account." *Id.*

Once Plaintiff learned about the alleged hack, he asserts he sought assistance from Facebook to recover his account. *Id.* at ¶¶ 16, 17. Plaintiff does not allege that he used Facebook's designated reporting methods to alert Facebook to this activity. Plaintiff now alleges that "Facebook will not assist Plaintiff in recovering his account or provide Plaintiff any information on how [he] can recover his account." *Id.* at ¶ 19.

The Complaint states that the hacker (or by extension Facebook) divulged the

---

[1] Facebook certifies that it notified Plaintiff about the issues in this motion. The parties were unable to agree on a resolution. Plaintiff offered to amend his complaint on the filing deadline. Facebook is willing to stipulate to extend Plaintiff's time to oppose this motion.

[2] Since Plaintiff filed his lawsuit, Facebook has taken steps to help Plaintiff recover control of his Facebook account.

1385714

contents of his account to a third party. *Id.* at ¶ 24. Plaintiff alleges that Facebook gave him a "false sense of security" in his Facebook account. *Id.* at ¶ 30. Plaintiff states that Facebook owes him a duty to "exercise reasonable care in safeguarding and protecting" his account information.

On these facts, the Complaint asserts five causes of action: (1) violation of the Stored Communications Act (SCA) Section 2701(a); (2) violation of SCA Section 2702(a); (3) breach of contract; (4) intrusion on seclusion; and (5) negligence.

## B. Facebook's Statement of Rights and Responsibilities and the Forum Selection Clause

Plaintiff concedes that when he created his Facebook account, he "was required to, and did, affirmatively assent" to the Facebook user agreement: the Statement of Rights and Responsibilities (SRR). Compl. ¶¶ 35-36.[3] Although Plaintiff did not attach it to his Complaint, a copy of the SRR that Plaintiff cites is attached to the accompanying declaration Facebook files with this Motion. *See* Exh. 1, Declaration of Nicholas Wong in Support of Facebook, Inc.'s Motion (hereinafter "Wong Decl."), Exh. A. The SRR Plaintiff quotes in his Complaint includes a forum-selection clause which requires litigation of "any claim, cause of action or dispute . . . arising out of or relating to this Statement or Facebook exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County." Wong Decl. Exh. A, §15.1.

The SRR also contains the following provisions related to security, privacy, and actions taken by third parties:

- "We do our best to keep Facebook safe, but we cannot guarantee it." *Id.,* § 3.

- "We are not responsible for the conduct, whether online or offline, of any user of Facebook." *Id.*, § 15.2.

- "YOU USE [FACEBOOK] AT YOUR OWN RISK. WE ARE

---

[3] Where a "contract [is] attached to the complaint and incorporated" into the complaint, the Court need not "accept as true conclusory allegations in the complaint which are contradicted by the clear import of the contract itself." *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 665 (9th Cir. 1998).

PROVIDING FACEBOOK AS IS WITHOUT ANY EXPRESS OR IMPLIED WARRANTIES." *Id.*, § 15.3 (capitalization in original).

- "WE DO NOT GUARANTEE THAT FACEBOOK WILL ALWAYS BE SAFE, SECURE OR ERROR-FREE." *Id.* (capitalization in original).

- "FACEBOOK IS **NOT RESPONSIBLE FOR THE ACTIONS**, CONTENT, INFORMATION OR DATA **OF THIRD PARTIES**, AND YOU RELEASE US, OUR DIRECTORS, OFFICERS, EMPLOYEES, AND AGENTS FROM ANY CLAIMS AND DAMAGES, KNOWN AND UNKNOWN, ARISING OUT OF OR IN ANY WAY CONNECTED WITH ANY CLAIM YOU HAVE AGAINST ANY SUCH THIRD PARTIES." *Id.* (capitalization in original; emphasis added).

In short, Plaintiff contractually agreed that Facebook is not responsible for the actions of third parties. *Id.*

## III.   ARGUMENT

### A.   The Court should dismiss the Complaint for lack of personal jurisdiction.

#### 1.   Rule 12(b)(2) Standard

When a defendant moves to dismiss for lack of personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990); *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017). The plaintiff cannot "rest on the bare allegations of its complaint," *Amba Marketing Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977), but uncontroverted allegations in the complaint will be taken as true. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

#### 2.   Plaintiff has failed to establish that this Court has personal jurisdiction over Facebook.

For this Court to exercise personal jurisdiction, due process requires that Facebook have "certain minimum contacts with [Arizona] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945). That minimum-contacts analysis is intended to protect defendants against the burdens of litigating in distant or inconvenient forums, and to ensure that states do not reach beyond the limits imposed by their status as co-equal

4

1    sovereigns in a federal system. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286,

2    291–92 (1980).

3         Although Facebook is the moving party, Plaintiff bears the burden of establishing

4    jurisdiction. *See Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Plaintiff must

5    demonstrate either *specific* jurisdiction (which attaches to suits arising from a defendant's

6    contact within the forum) or *general* jurisdiction (which can more broadly attach to suits

7    unrelated to defendant's contacts with the forum). *See, e.g., Schwarzenegger v. Fred

8    Martin Motor Co.*, 374 F.3d 797, 807 (9th Cir. 2004) (finding neither basis and granting

9    defendant's motion to dismiss). Plaintiff has not met that burden.

10              **a.     Plaintiff has failed to establish this Court has general
                        jurisdiction over Facebook.**

11

12        This Court cannot exercise general jurisdiction over Facebook. A court may assert

13   general jurisdiction only when the defendant's "affiliations with the State are so

14   continuous and systematic as to render [it] essentially at home in the forum State."

15   *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). A corporate

16   defendant is normally "at home" in just two places: "the place of incorporation and

17   principal place of business." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). Arizona

18   is neither of these places for Facebook, which is incorporated in Delaware and has its

19   principal place of business in California. *See* Compl. ¶ 6 (Facebook "is a Delaware

20   corporation with its principal place of business in Menlo Park, California"). *See also*

21   Facebook, Inc. Form 10-K for the Fiscal Year Ended December 31, 2017 at 1, 7, available

22   at https://perma.cc/CR8U-PWDV (last visited June 15, 2020); *Ralls v. Facebook*, 221

23   F. Supp. 3d 1237, 1243 n.4 (W.D. Wash. 2016) (taking judicial notice of Facebook's state

24   of incorporation and principal place of business).

25        Accordingly, general jurisdiction is proper only in the "exceptional case" where

26   Facebook's "operations in [Arizona] 'may be so substantial and of such a nature as to

27   render [Facebook] at home in [Arizona].'" *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558

28   (2017) (quoting *Daimler AG*, 571 U.S. at 139 n.19). Conducting business in a specific

state does not justify the exercise of general jurisdiction, especially because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler AG*, 571 U.S. at 139 n.19. Plaintiff alleges that Facebook "does business in Maricopa County, Arizona," Compl. ¶ 6, and that Facebook has "sufficient minimum contacts in Arizona, or otherwise intentionally avail[s] [itself] of the markets within Arizona, through the promotion, sale, marketing and distribution of their services and products in Arizona." *Id.* at ¶ 2. But Facebook is available anywhere in the United States—including Arizona—where an internet connection exists, and thus Plaintiff has not demonstrated anything about this case is exceptional and thus merits treating *Arizona,* as opposed to any other state, as Facebook's home for general jurisdiction. *See, e.g., Ralls*, F. Supp. 3d at 1246 (granting dismissal for lack of personal jurisdiction in Washington).

### b. Plaintiff has failed to establish this Court has specific jurisdiction over Facebook.

For this Court to exercise "specific jurisdiction" over Facebook, Plaintiff would have to show that ***Facebook's*** "*suit-related conduct* … create[s] a substantial connection with [Arizona]." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (emphasis added). To determine whether the exercise of "specific jurisdiction would afford appropriate due process, courts in the Ninth Circuit follow a three-part test:"

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802.

In other words, even if Plaintiff alleged that Facebook conducted specific activities

in Arizona, that would not be enough; he would also need to demonstrate that *his specific claims* flowed directly from that conduct. *Id.* Unless he meets that bar, "specific jurisdiction is lacking *regardless* of the extent of a defendant's unconnected activities in [Arizona]." *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1781 (2017) (emphasis added) (quoting *Goodyear*, 564 U.S., at 931 n. 6).

Here, Plaintiff makes no such effort. The Complaint lacks allegations concerning any activity that Facebook directed towards Arizona. Moreover, Plaintiff fails to allege how his claims "arise out of or relate to" any particular activity Facebook directed to Arizona. *Schwarzenegger*, 374 F.3d at 802. To the contrary, and as Plaintiff's Complaint notes, the alleged hack is the purposeful activity of an unknown hacker, not Facebook.

The allegation that Plaintiff happens to be a "resident" of "Maricopa County," Compl. ¶ 5, is not sufficient for this Court to exercise personal jurisdiction over Facebook. The relevant inquiry for specific jurisdiction is based "not [on] where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." *Walden*, 571 U.S. at 290. Plaintiff has not established that Facebook has jurisdictionally relevant contacts with Arizona. Without a basis to assert personal jurisdiction over Facebook, this Court must dismiss the Complaint.

**B.    The Court should dismiss the Complaint with prejudice for failure to state a claim.**

**1.    Standard**

To survive a motion to dismiss, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Satisfying this obligation requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. The complaint must provide "more than labels and conclusions" or a "blanket assertion of entitlement to relief." *Twombly*, 550 U.S. at 555 & n.3. In addition, "[t]he plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint

that merely pleads facts that are "consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 545-46.

Plaintiff's Complaint fails to adequately state a claim for all five causes of action.

### 2.   Plaintiff has no cause of action against Facebook under the Stored Communications Act.

The Stored Communications Act is not a vehicle to drag an electronic service provider into court for the actions of an unknown, third-party hacker. Plaintiff alleges Facebook failed to comply with two different sections of the Stored Communications Act ("SCA"): 18 U.S.C. §§ 2701(a) and 2702(a). Plaintiff's claims under Section 2701(a) fail as a matter of law because Facebook cannot hack into its own servers and is exempt from liability under Section 2701(c). Plaintiff also does not plausibly explain how Facebook knowingly divulged information to a third party under Section 2702(a). Finally, Plaintiff also fails to allege any plausible basis that Facebook harbored the necessary intent under the SCA for a violation of either provision. Because there are no plausible SCA claims Plaintiff can assert, these claims should be dismissed without leave to amend.

### a.   Plaintiff cannot plausibly allege that Facebook violated Section 2701(a).

Plaintiff asserts Facebook violated Section 2701(a) of the Stored Communication Act. Section 2701(a) provides a claim against anyone who:

> (1) *intentionally* accesses *without authorization* a facility through which an electronic communication service is provided; or (2) *intentionally exceeds an authorization to access* that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

(Emphasis added.)

Plaintiff's Section 2701(a) claim fails as a matter of law for at least three reasons. First, Section 2701(c) explicitly exempts the provider of a wire or communication service from claims brought under Section 2701(a). *See* 18 U.S.C. § 2701(c)(1) (exempting the "entity providing a wire or electronic communication service" (here, Facebook) from

8

liability). As other courts have held, a claim that a provider is liable for accessing its own servers "borders on frivolous, considering the plain language of subsection (c)." *In re Google, Inc. Privacy Policy Litig.*, No. C-12-01382-PSG, 2013 WL 6248499, at *12 (N.D. Cal. Dec. 3, 2013); *In re iPhone Application Litig.*, 844 F.Supp.2d 1040, 1057–58 (N.D. Cal. 2012).

Second, the Complaint lacks any facts demonstrating that Facebook is not authorized to access its own facilities, which, in any event, would be impossible to plead. Other courts have held that a company cannot "hack" its own servers and dismissed similar Section 2701(a) claims. *See, e.g., Svenson v. Google Inc.*, 65 F.Supp.3d 717, 726 (N.D. Cal. 2014) ("It appears from the face of the complaint that the 'facility' in question was *Defendants' own servers*. . . . Plaintiff does not allege any facts suggesting that Defendants were not authorized to access their own servers."). Plaintiff's only factual allegation on this claim simply states that "[u]ser information stored by Facebook and compromised by the hacker is encompassed within the definition of 'electronic storage' under the SCA." Compl. ¶ 22. If the hacker accessed Facebook's facilities without authorization, Plaintiff may have a Section 2701(a) claim against the hacker; however, Plaintiff cannot allege that Facebook accessed its own servers without authorization.

Third, Plaintiff's claim under Section 2701(a) fails for the independent reason that there is no plausible allegation that Facebook has the requisite unlawful intent. In order to sustain a civil claim under the SCA, a plaintiff must plead facts plausibly demonstrating that Facebook improperly accessed (or exceeded its authorized access to) plaintiff's account with "a knowing or intentional state of mind." 18 U.S.C. § 2707(a) (civil claim). The Complaint alleges no facts suggesting that Facebook intentionally accessed its own facilities without authorization and with the intent to distribute Plaintiff's communications.

Plaintiff fails to state a claim for a violation of Section 2701(a) of the SCA.

9

### b.  Plaintiff cannot plausibly allege that Facebook knowingly divulged information to a third party under Section 2702(a).

Section 2702(a) of the SCA requires that "a person or entity providing an electronic communication service to the public shall not *knowingly divulge* to any person or entity the contents of a communication while in electronic storage by that service." (Emphasis added). Plaintiff alleges that Facebook is liable under § 2702(a) because it "unlawfully divulge[d] the contents of Plaintiff's communications to third parties, including but not limited to whomever the hacker is sending communications or information to while logged into Plaintiff's account." Compl. ¶ 24. But Plaintiff does not allege that Facebook knowingly divulged any communications. To the contrary, Plaintiff alleges that the *hacker* stole Plaintiff's information and that Facebook merely "fail[ed] to take reasonable security standards." *Id.* ¶ 33.

An alleged failure to take steps to protect information in the event of a hack, even if true, does not constitute "knowingly divulg[ing]" information under the SCA. The SCA does not define "knowingly," but courts have looked to the SCA's legislative history to determine its meaning. *See Worix v. MedAssets, Inc.*, 857 F. Supp. 2d 699, 702 (N.D. Ill. 2012); *Muskovich v. Crowell*, No. CIV. 3-95-CV-20007, 1996 WL 707008 (S.D. Iowa Aug. 30, 1996). The congressional record states that "knowingly" refers to "the act of disclosure" and does not include "'reckless' or 'negligent' conduct." H.R.Rep. No. 647, 99th Cong., 2nd Sess. at 64 (1986).

In *Muskovich*, the defendant's employee harassed the plaintiff, whose phone number the employee retrieved from company records. 1996 WL 707008, at *1. The plaintiff alleged that defendant violated the SCA by failing to implement adequate safety procedures and that defendant "knew or should have known" that the lack of safeguards would lead to the disclosure of private information. *Id.* at *3. The Court concluded that the mere possibility that an employee could abuse the records was not sufficient to show the defendant corporation "knowingly" divulged information under the SCA. *Id.* at *4-5. Similarly, in *Worix,* an unknown person stole a hard drive from a car that belonged to

1385714

defendant's employee. 857 F. Supp. 2d at 700. The hard drive, which contained confidential patient information, was neither encrypted nor password protected. *Id.* The plaintiff alleged defendant violated the SCA by failing to encrypt or protect the hard drive. *Id.* at 703. The court, relying on *Muskovich*, dismissed the claim because the defendant could not have the requisite "substantial certainty" of "an unknown actor's theft." *Id.*

Here, as in *Muskovich* and *Worix*, the relevant actions are those surrounding the alleged exposure of Plaintiff's information. The Complaint explicitly alleges that Plaintiff's Facebook account was hacked by "an unknown source." Compl. ¶ 15. The crux of Plaintiff's Complaint is that a hacker accessed Plaintiff's account without authorization—illegal activity that Facebook has no control over. Plaintiff cannot plead the existence of any requisite intent on Facebook's part. Other than asserting that Facebook should "maintain reasonable security procedures," Plaintiff alleges no facts to support his unfounded assertion that Facebook knowingly divulged information to a third party. Plaintiff also fails to allege what – if any – specific information was provided to a third party and what harm he suffered as a result. The Complaint lacks allegations regarding how Facebook should have been "substantially certain" of a third party's actions or the requisite intent to divulge any information. *See Worix*, 857 F. Supp. 2d at 703.[4] The Complaint thus fails to state a claim that Facebook violated Section 2702(a).

### 3.    The Complaint fails to state a claim for breach of contract.

Under both California and Arizona law, "when a contract has been reduced to writing, a court must ascertain the parties' intent from the writing alone, if possible." *Yount v. Acuff Rose–Opryland*, 103 F.3d 830, 836 (9th Cir. 1996) (citing Cal. Civ. Code § 1636); *Amfac Distrib. Corp. v. J.B. Contractors, Inc.*, 146 Ariz. 19, 23 (App. 1985) (holding that "the interpretation of a contract is a question of law for the court and where

---

[4] To the extent this Court could read Plaintiff's claim as alleging Facebook aided or abetted the alleged hacker's access to Plaintiff's communications, that is not a valid claim under the SCA. The SCA contains no liability for aiding and abetting another's violation of the SCA. *See* 18 U.S.C. §§ 2701 *et seq.*; *see, e.g.*, *Garback v. Lossing*, No. 09-cv-124067, 2010 WL 3733971, *6 n.6 (E.D. Mich. Sept. 20, 2010) ("Congress did not expressly provide for secondary liability for violations of [18 U.S.C.] §§ 2701 and 2707").

the language of a contract is clear and unambiguous it must be given effect as it is written"). In an action for breach of a written contract, a plaintiff must allege the specific provisions in the contract creating the obligation the defendant is said to have breached. *See Beecher v. Google N. Am. Inc.*, No. 18-CV-00753-BLF, 2018 WL 4904914, at *2 (N.D. Cal. Oct. 9, 2018) (dismissing contract claim where the defendant did not breach a specific promise); *Kincaid v. Wells Fargo Bank, N.A.*, No. CV–10–579–PHX–DGC, 2010 WL 2899058, at *2–3 (D. Ariz. July 22, 2010) (same).

Plaintiff concedes that when he created his Facebook account, he agreed to the Facebook Statement of Rights and Responsibilities ("SRR"). Compl. ¶¶ 35-36. In his Complaint, Plaintiff cites a provision of the SRR he alleges applies here. The SRR, however, explicitly states that Plaintiff uses Facebook at his own risk. Wong Decl. Exh. A, §15.3. The provision continues: "Facebook is not responsible for the actions . . . of third parties. And [Plaintiff] release[s] [Facebook] from any claims and damages, known and unknown, arising out of or in any way connected with any claim you have against any such third parties." *Id.* Moreover, Plaintiff agreed that Facebook is "not responsible for the conduct, whether online or offline, of any user of Facebook." *Id.* § 15.2.

Here, Plaintiff's breach of contract claim alleges that Facebook made a promise to "safeguard [users'] sensitive personal information." Compl. ¶ 40. The Complaint does not allege where the SRR makes such a statement. Instead, the Complaint fails to acknowledge the specific language that disclaims Facebook's liability for the actions of a third party, such as an unknown hacker. The Complaint then alleges that Facebook breached the following promise: "You own all of the content and information you post on Facebook, and you can control how it is shared through your privacy and application settings." Compl. ¶ 38. But the Complaint lacks specific allegations regarding how Facebook itself breached the contract based on the actions of an unknown third party. Moreover, as another court has recognized, while Facebook's SRR "place[s] restrictions on users' behavior," it does "not create affirmative obligations." *Young v. Facebook, Inc.*, No. 5:10–cv–03579–JF/PVT, 2010 WL 4269304, at *3 (N.D. Cal. Oct. 25, 2010).

12

1385714

Plaintiff therefore cannot base his breach of contract claims on the SRR. The Complaint fails to state a claim for breach of contract.

### 4. The Complaint fails to state a claim for intrusion of seclusion.

Under Arizona and California law, the elements for intrusion upon seclusion are: (1) an intentional intrusion into a private place, conversation, or matter, (2) in a manner highly offensive to a reasonable person. *See Shulman v. Group W Prods., Inc.*, 18 Cal. 4th 200, 231 (1998); *Med. Lab. Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 812 (9th Cir. 2002) (construing Arizona law). To prevail on the first element, the plaintiff must show he had a reasonable expectation of seclusion and that the defendant intentionally offended that expectation. *Med. Lab.*, 306 F.3d at 812–13.

Plaintiff fails to allege that Facebook – as opposed to the hacker – intruded on Plaintiff's privacy. The Complaint also fails to allege that Facebook intended any intrusion. And the Complaint does not allege any specific act *by Facebook* that constituted an intrusion. Meanwhile, the SRR specifies that Plaintiff "release[s] [Facebook] from any claims and damages, known and unknown, arising out of or in any way connected with any claim you have against any such third parties." Wong Decl. Exh. A, § 15.3. Plaintiff cannot allege a claim for intrusion upon seclusion.

### 5. The Complaint fails to state a claim for negligence.

The SRR is also fatal to Plaintiff's negligence claim. Under both California and Arizona law, negligence has the same elements: "a duty owed to the plaintiff, a breach thereof and an injury proximately caused by the breach." *Wertheim v. Pima Cty.*, 211 Ariz. 422, 424, ¶ 9 (App. 2005) (citations omitted); *Ladd v. Cty. of San Mateo*, 12 Cal. 4th 913, 917 (1996). As explained below, in the SRR Plaintiff disclaimed any applicable duty that Facebook would have otherwise owed to him.

The Complaint alleges that Facebook owed Plaintiff a duty to safeguard his personal information and take "other reasonable security measures to protect and adequately secure [his] personal data." Compl. ¶ 32. The Complaint also alleges Facebook has "a responsibility to take reasonable security measures to protect the data from being

stolen and, in the event of theft, easily accessed." *Id.* But the Complaint lacks any allegations regarding why Facebook owes any such duties to Plaintiff. To the contrary, the SRR specifically states that Facebook is not responsible for the actions of third parties and that it cannot guarantee Facebook will be safe. Wong Decl. Exh. A, §§ 3, 15.3. Although Facebook's SRR may restrict user behavior, it does "not create affirmative obligations" for Facebook. *Young,* 2010 WL 4269304, at *3.

Moreover, the Complaint does not allege how Facebook breached its duty. Plaintiff states that "[t]here is a very close connection between Facebook's failure to take reasonable security standards to protect its users' data" and Plaintiff's purported injuries. Compl. ¶ 33. But Plaintiff does not allege with any specificity how Facebook allegedly failed to take reasonable security measures. Nor can he. The Complaint indicates that this hack was entirely the action of an unknown third-party and not through any action in Facebook's control. Compl. ¶ 15. The Complaint does not, for example, allege how the hack was plausibly caused by any alleged action or inaction by Facebook. In fact, Facebook has cooperated with Plaintiff to try and recover his account. The Complaint fails to adequately state a claim for negligence.

## IV.   ALTERNATIVELY, THE COURT SHOULD TRANSFER THIS CASE TO THE NORTHERN DISTRICT OF CALIFORNIA.

If this Court is not inclined to address the Complaint on the merits, then the Court should transfer this case to the Northern District of California, pursuant to 28 U.S.C. § 1404(a). Plaintiff contractually agreed to litigate his purported claims in that Court, and Plaintiff cannot meet his burden of establishing that Facebook's forum-selection clause is invalid or that this is an extraordinary case where the Court should not enforce that clause.

### A.   The parties agreed to litigate in the Northern District of California.

Plaintiff concedes that when he created his Facebook account, he "was required to, and did, affirmatively assent" to the Facebook SRR. Compl. ¶¶ 35-36. That SRR, which is attached to the declaration accompanying Facebook's Motion, contains a forum selection clause. Wong Decl. Exh. A, § 15.1. The forum-selection clause requires litigation of "any

14

claim, cause of action or dispute . . . arising out of or relating to this Statement or Facebook exclusively in the U.S. District Court for the Northern District of California or a state court located in San Mateo County." *Id.*

All of Plaintiff's claims fall within the scope of the forum-selection clause because they arise from either a third-party's actions on Facebook or Plaintiff's ability – or inability – to use the Facebook platform. As the forum-selection clause requires, any litigation regarding the use of Facebook must occur in the Northern District of California or in a state court located in San Mateo County. Plaintiff's contractual claim arises directly out of the SRR, as evidenced by the fact that Plaintiff relies on the SRR as the underlying contract. The forum selection clause applies to each claim in the Complaint.

### B. Plaintiff cannot rebut the presumption that this Court should enforce the forum-selection clause.

In *Atlantic Marine Construction Company v. U.S. District Court for the Western District of Texas*, the Supreme Court held that a forum-selection clause may be enforced through a motion to transfer under 28 U.S.C. § 1404(a). 571 U.S. 49, 59 (2013). Under Section 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Transfer is appropriate if the "parties have agreed by contract or stipulation" to litigate disputes in another forum. *Atl. Marine*, 571 U.S. at 59.

The Supreme Court held that where "the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.* at 62. "Only under extraordinary circumstances unrelated to the convenience of the parties should a § 1404(a) motion be denied." *Id.* Furthermore, "the plaintiff must bear the burden of showing why the court should not transfer the case to the forum to which the parties agreed." *Id.* at 63.

#### 1. Plaintiff cannot establish that the forum-selection clause is invalid.

Under Section 1404(a), forum-selection clauses are presumptively valid and

enforceable. *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1088 (9th Cir. 2018). As the Ninth Circuit has explained: "The practical result is that a forum-selection clause 'should control except in unusual cases.'" *Id.* (quoting *Atl. Marine*, 571 U.S. at 64).[5]

Here, Plaintiff has not and cannot meet this heavy burden of establishing that the forum-selection clause is not valid. Indeed, courts routinely enforce internet-based terms of service, including Facebook's SRR specifically. *See, e.g., We Are The People, Inc. v. Facebook, Inc.*, No. 19-cv-8871(JMF), 2020 WL 2908260 (S.D.N.Y. June 3, 2020) (enforcing Facebook forum selection clause and transferring case to California); *Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153 (D. Haw. 2018) (same); *Miller v. Facebook, Inc.*, No. 1:09-CV-2810-RLV, 2010 WL 9525523, at *1 (N.D. Ga. Jan. 15, 2010) (upholding the forum-selection clause because doing otherwise "could wreak havoc on the entire social-networking internet industry"). In fact, a federal district court noted that it could not find "a single instance where any federal court has struck down [Facebook's] SRR as an impermissible contract of adhesion induced by fraud or overreaching or held the forum selection clause now at issue to be otherwise unenforceable." *Franklin v. Facebook Inc.*, No. 1:15–CV–00655-LMM, 2015 WL 7755670, at *2 (N.D. Ga. Nov. 24, 2015).

The Complaint offers no basis to deviate from this consistent precedent. Plaintiff thus cannot overcome the presumption that Facebook's forum-selection clause is valid.

### 2.  Plaintiff cannot show any extraordinary circumstances requiring deviation from the forum-selection clause.

Because the parties agreed to a valid forum-selection clause, Plaintiff cannot avoid its effect unless he can establish that there are "extraordinary circumstances unrelated to the convenience of the parties" requiring that it not be enforced. *Atl. Marine*, 571 U.S. at 62. That is because a valid forum-selection clause "[should be] given controlling weight in all but the most exceptional cases." *Id.* at 63. In making this determination, the court must evaluate only the public interest; the Plaintiff's decision to file suit outside of the Northern

---

[5] Federal law determines the enforceability of forum-selection clauses in both diversity and federal question cases. *See Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009).

District of California "merits no weight" in the transfer analysis, and courts "should not consider arguments about the parties' private interests." *Id.* at 63-64. That means any "inconvenience [the parties] would suffer by being forced to litigate in the contractual forum as [they] agreed to" is irrelevant. *Id.* at 64 (alterations in original). The Plaintiff must show that the public-interest factors "overwhelmingly disfavor a transfer." *Id.* at 67.

Here, Plaintiff does not and cannot meet this burden. To the contrary, the public interest favors enforcing the forum-selection clause. The public maintains a strong interest in enforcing forum-selection clauses to provide consistency and certainty for companies such as Facebook. Absent enforcement, companies like Facebook – which provides free networking services and access to information to users all over the world – would face the undue burden of litigating claims in countless jurisdictions:

> [S]triking the forum selection clause could wreak havoc on the entire social networking internet industry. If this court were to determine that the forum selection clause contained in Facebook's TOU was unenforceable, the company could face litigation in every state in this country and in nations around the globe which would have potential adverse consequences for the users of Facebook's social-networking site and for other internet companies.

*Miller*, 2010 WL 9525523, at *1; *accord Song fi, Inc. v. Google Inc.*, 72 F.Supp.3d 53, 64 (D.D.C. 2014) ("[B]ecause many millions of users from across the globe create accounts and upload videos on YouTube's website free of charge, the forum-and-venue-selection clause is necessary to manage the costs of litigation and reduce the burden to YouTube personnel of litigating all over the world.").

Because Plaintiff cannot establish that the forum-selection clause he agreed to is invalid, and because he furthermore cannot establish that the public interest in any way disfavors transfer – much less overwhelmingly so – the Court must enforce the forum-selection clause and transfer this case to the Northern District of California in accordance with *Atlantic Marine*, Section 1404(a), and the parties' agreement.

## V.    CONCLUSION

For the foregoing reasons, the Court should dismiss the Complaint with prejudice, or in the alternative, transfer this case to the Northern District of California.

DATED this 16th day of June, 2020.

OSBORN MALEDON, P.A.

By  s/ Joshua D. Bendor
   Joshua D. Bendor
   2929 North Central Avenue, Suite 2100
   Phoenix, Arizona 85012-2793

KEKER, VAN NEST & PETERS LLP

   Paven Malhotra *(pro hac vice to be filed)*
   Deeva V. Shah *(pro hac vice to be filed)*
   633 Battery Street
   San Francisco, California 94111-1809

Attorneys for Defendant

18